## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPT. TRAVIS ROBERTS, Arkansas Air National Guard,<br><br>108197 S. 4803 Rd.<br>Muldrow, OK 74948<br><br>      Plaintiff,<br><br>      v.<br><br>HON. JOHN P. ROTH, in his official capacity as Acting Secretary of the United States Air Force;<br><br>1670 Air Force Pentagon<br>Washington, DC 20330-1670<br><br>GEN. DANIEL R. HOKANSON, in his official capacity as Chief, National Guard Bureau;<br><br>1636 Defense Pentagon Ste 1E169<br>Washington, DC 20301-0001<br><br>LT. GEN. DOROTHY A. HOGG, in her official capacity as Surgeon General of the United States Air Force; and<br><br>1780 Air Force Pentagon<br>Washington, DC 20330-1780<br><br>MAJ. GEN. KENDALL W. PENN, in his official capacity as the Adjutant General, Arkansas National Guard,<br><br>Post Headquarters, Camp Robinson<br>North Little Rock, AR 72199-9600<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Civil Action No.:**  1:21-cv-01797<br><br><br>**JURY TRIAL DEMANDED** |

---

### VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

Plaintiff Captain Travis Roberts ("Captain Roberts" or "Plaintiff"), by and through his undersigned attorneys, for his Complaint states:

## INTRODUCTION

1.      Captain Roberts is a decorated military aviator.  In 2018, Captain Roberts left his role as a CH-47D/F "Chinook" helicopter pilot with the Texas Army National Guard to join the 188th Wing of the Arkansas Air National Guard, where he would be trained as a Remotely Piloted Aircraft[1] ("RPA") pilot.

2.      The U.S. Department of the Air Force (the "Air Force") enforces a policy of Individual Medical Readiness ("IMR"), which requires unit commanders, including Air National Guard commanders, to fulfill certain medical requirements (periodic assessments and studies, identifying limiting conditions, etc., for their Airmen) and report key metrics to the Air Force Surgeon General.  One of these readiness requirements concerns immunizations.  *See* Air Force Instruction ("AFI") 10-250 2.1.3.

3.      In order to attend RPA training, Captain Roberts must meet all applicable IMR requirements, including keeping current on his immunizations.

4.      Captain Roberts is a devoted Christian and holds an unwavering belief in divine healing and natural protection.  Captain Roberts objects to the placing of what he considers external contaminants in the human body, especially into the bloodstream, based on religious grounds.  Captain Roberts further objects to the use of human fetal cell lines in the development of vaccines, also based on religious grounds.  Thus, Captain Roberts requested a religious accommodation to be exempted from certain IMR requirements related to immunizations.

---

[1] The term "Remotely Piloted Aircraft" refers to drones, such as the MQ-9 Reaper and the RQ-4 Global Hawk. https://www.airforce.com/careers/detail/remotely-piloted-aircraft-pilot (last accessed May 19, 2021).

5.      Captain Roberts' request adhered to the administrative process provided in AFI 48-110_IP.  The Major Command ("MAJCOM") denied the request on January 7, 2020.  Captain Roberts appealed to the Air Force Surgeon General.  The Surgeon General denied the appeal on May 13, 2020.  There is no further mechanism for appeal within the Air Force.

6.      The Surgeon General's stated basis for rejecting Captain Roberts' appeal conceded that RPA pilots rarely deploy to forward locations where immunizations are needed.  The Surgeon General instead found that RPA pilots tend to work in confined spaces where communicable diseases may more easily spread.  The Surgeon General concluded, without support, that granting Captain Roberts' religious accommodation waiver "could have a catastrophic result on the Wing's ability to meet its mission."

7.      Accordingly, without accommodation, Captain Roberts' IMR status precludes him from RPA training.  Without training, Captain Roberts lacks the qualifications prescribed for his intended position at the 188th Wing.

8.      As a result of Captain Roberts' faithful adherence to his religious beliefs, the 188th Wing convened a Withdrawal of Federal Recognition Board (the "Board"), as described at 32 U.S.C. § 323.  On May 1, 2021, the Board recommended Captain Roberts' Federal Recognition be withdrawn for his lack of mandatory qualifications.  Accordingly, Captain Roberts' honorable discharge is now imminent, pending final processing from the Air Force's central personnel office.

9.      This action is to (1) restrain Defendants from discharging Captain Roberts in violation of his right to the free exercise of religion, as described in the Constitution and in the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb et seq, and (2) require Defendants to afford Captain Roberts a religious-based immunizations waiver, enabling him to train as an RPA pilot and continue to serve his nation.

## JURISDICTION AND VENUE

10.     Jurisdiction is based on 28 U.S.C. §§ 1331, 1343(a), and 1346(a) in that this Complaint arises under a federal statute, 42 U.S.C. § 2000bb et seq.  Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 and 65.

11.     Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(A) because at least one Defendant who is an officer or employee of the United States resides in this District.

## PARTIES

12.     Plaintiff Captain Travis Roberts is a citizen of the United States and a resident of the State of Oklahoma.  Captain Roberts is an experienced aviator with both military and civilian credentials.  His employment with the Air Force and the Arkansas Air National Guard consists of two parts: (1) his Title 5 Federal technician employment, which terminated on August 21, 2020 as a result of the Air Force's failure to grant Captain Roberts' accommodation request, and (2) his Title 32 National Guard status at the 188th Wing, 188th Operations Group, which is pending final processing at the Air Force's central personnel office, the Air Reserve Personnel Center ("ARPC").  This type of dual status is described at 32 U.S.C. § 709.  Captain Roberts subscribes to a religious belief system that compels its adherents to avoid the ingestion or injection of human fetal cell lines, animal embryonic cell lines, fetal bovine serum, aluminum salts, formaldehyde, and other compounds and chemicals that are common ingredients in modern immunizations.

13.     Defendant John P. Roth is the Acting Secretary of the Air Force. Secretary Roth has authority, direction, and control over the Department of the Air Force.  *See* 10 U.S.C. § 8013. He is among those responsible for denying Plaintiff a religious exemption from the Air Force's immunization regulations.

14.     Defendant General Daniel R. Hokanson is Chief, National Guard Bureau.  General Hokanson is responsible for the organization and operations of the National Guard Bureau.  *See*

4

10 U.S.C. § 10502.  He is among those responsible for denying Plaintiff a religious exemption from the Air Force's immunization regulations.

15.     Defendant Lieutenant General Dorothy A. Hogg is the Surgeon General of the Air Force.  She is among those responsible for denying Plaintiff a religious exemption from the Air Force's immunization regulations.

16.     Defendant Major General Kendall W. Penn is the Adjutant General, Arkansas National Guard.  He is among those responsible for denying Plaintiff a religious exemption from the Air Force's immunization regulations.

17.     Defendants are sued in their official capacities.

18.     Relief is sought against each defendant as well as his/her agents, assistants, successors, employees, attorneys, and all persons acting in concert or cooperation with them or at their direction or under their control.

## FACTS

### *Captain Roberts' History with the Arkansas Air National Guard*

19.     Captain Roberts attended Sam Houston State University as a member of the Reserve Officer Training Corps ("ROTC").   Upon completing the ROTC program as a Distinguished Military Graduate, he received his officer's commission in the Army Aviation Branch in August 2009.

20.     Captain Roberts then attended the Aviation Basic Officer Leadership Course, Survival Evasion Resistance and Escape ("SERE") – C Level course, Initial Rotary Wing training, and Advanced Graduate Flight Training on the CH-47D helicopter at Fort Rucker, Alabama. Later, he attended the Aviation Captain's Career Course, an intensive course designed to further an officer's mastery of core doctrinal foundations including unified land operations, mission command, and leadership principles, as well as develop knowledge in brigade/battalion-level

planning for both aviation and ground units.

21.    In his career as a helicopter pilot in the Texas National Guard between 2009 and 2018, Captain Roberts was mobilized in support of domestic fire, flood, and hurricane relief operations and was deployed overseas in support of counterterrorism operations.

22.    As a civilian, Captain Roberts has worked for the Fort Worth Fire Department as a firefighter and emergency medical technician.  He is also a Federal Aviation Administration ("FAA") certified commercial pilot with instrument rating on both fixed- and rotary-wing aircraft.

23.    Captain Roberts' military record is without blemish:  he has earned three Army Accommodation Medals, the Army Achievement Medal, and the Global War on Terrorism Expeditionary Medal, among numerous other medals, badges, and decorations.

24.    Captain Roberts has consistently tested in the upper percentages on military aptitude tests, such as the Air Force Officer Qualifying Test and the Test of Basic Aviation Skills.

25.    Captain Roberts holds a Top Secret/Sensitive Compartmentalized Information ("TS/SCI") security clearance, essentially the highest security clearance a servicemember can attain, which involves a thorough and costly investigation into the applicant's background, contacts, finances, travel, criminal history, employment, and other matters.

26.    Captain Roberts is a model officer and military leader, who possesses critical technical knowledge, skills, and training, and has demonstrated a commitment to bettering himself and serving his country.

27.    In March 2018, Captain Roberts transferred from the Texas National Guard to become an RPA pilot with the 188th Wing of the Arkansas Air National Guard.

28.    A June 2020 Government Accountability Office ("GAO") study found that the Air Force is experiencing a shortage of RPA pilots.  *See* UNMANNED AERIAL SYSTEMS Air Force Should Take Additional Steps to Improve Aircrew Staffing and Support, GAO Report to

Congressional Committees, https://www.gao.gov/assets/gao-20-320.pdf (last accessed May 19, 2021).

29.     Captain Roberts has been a practicing Christian his entire life, including during his time with the Texas National Guard.  There, Captain Roberts received a number of mandatory immunizations without objection.  However, in 2017, after the death of his father and birth of his first child, Captain Roberts reflected on his faith and determined that immunizations and the proper exercise of his faith were incompatible.

30.     In the Fall of 2018, after relocating to the Fort Smith area from Texas with his family, Captain Roberts prepared to attend RPA training.  Part of this preparation entailed obtaining medical clearance.  During his medical assessment and examination, Captain Roberts refused the influenza and tetanus-diphtheria immunizations, as well as a tuberculosis test involving an intradermal injection.  His refusal prompted the process for requesting a religious accommodation, which consisted of the following elements:



*See* Lieutenant Colonel Christopher J. Baker, Over Your Dead Body: An Analysis on Requests for Religious Accommodations for Immunizations and Vaccinations in the United States Air Force, 81 A.F.L. Rev. 1, 3 (2020).

31.    Captain Roberts followed each of the required steps, first submitting his initial request to his commander on December 2, 2018, which the MAJCOM denied on January 11, 2020, and then appealing the decision to the Air Force Surgeon General on March 16, 2020, which was denied on May 13, 2020.

32.    At the 188th Wing, the response to Captain Roberts' request centered on "24/7 combat operations," "long hours," and "confined spaces" and the potential spread of contagious illness in the workplace, as well as the potential impact to deployability. *See*, *e.g.*, Legal Review by Staff Judge Advocate, Lt. Col. Jenny L. Johnson, dated March 11, 2019.

33.    No response from 188th Wing leadership, medical, legal, or religious services discussed the possibility of employing other means to discourage the spread of communicable disease, such as physical distancing, schedule modifications, or a transfer to another unit.  Both the Air Force Surgeon General and 188th Wing personnel seemed to agree that RPA pilots do not have a high tendency to deploy overseas (precisely because their job is remote), where immunizations are more critical.

34.    During the pendency of his request and appeal, the Air Force denied Captain Roberts his RPA pilot training.  Thus, for around two years, local leadership assigned Captain Roberts to a position as mission scheduler for the 188th Operations Group (the "Group").  Captain Roberts worked full time at the Group at its operational facilities located on Ebbing Air National Guard Base in Fort Smith, Arkansas until August 21, 2020.

35.    As the Group mission scheduler, Captain Roberts worked among the Group's airmen, inside the same facilities that housed the RPA pilots and mission staff.  Captain Roberts, though disappointed with his placement, worked to improve the mission scheduling system, standardizing processes, and creating efficiencies, at the same time attending correspondence courses at the Air Command and Staff College in order to improve as an officer.  Captain Roberts'

commander, Colonel Patric Coggin, reported at the time that "Travis is a great officer; multi-faceted with unique/valuable skills & inter service experience."

36.     During this time, Captain Roberts held a dual-status position, as described in 32 U.S.C. § 709(b).  This meant that Captain Roberts was both a GS-13 Air Force employee during the ordinary workweek and an O-3 Air Force officer during drill weekends and training.  Captain Roberts' GS employment was contingent on maintaining his military status.  Thus, after Captain Roberts was notified of the Air Force Surgeon General's accommodation denial in mid-2020, and he still denied the required immunizations, the Air Force terminated his GS employment in August 2020.  The Arkansas Air National Guard then convened a Withdrawal of Federal Recognition Board in early May 2021, which ultimately recommended Captain Roberts' honorable discharge.

37.     Captain Roberts' discharge is now imminent, pending final processing from ARPC.

*Air Force Immunization and Religious Accommodation Regulations*

38.     Immunizations in the Air Force are governed by AFI 48-110_IP, entitled "Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases." The section detailing religious-accommodation exemptions provides, in pertinent part:

> (a) *Servicemembers*. Immunization exemptions for religious reasons may be granted according to Service-specific policies to accommodate religious beliefs of a Service member. This is a command decision made with medical, judge advocate, and chaplain input.
>
> 1. Requests for religious exemption must comply with the provisions of the applicable policy and/or regulation for the Servicemember requesting religious accommodation. . . . For the Air Force, permanent exemptions for religious reasons are not granted; the MAJCOM commander is the designated approval and revocation authority for temporary immunization exemptions. . . .
> 2. A military physician must counsel the applicant. The physician should ensure that the Servicemember is making an informed decision and should address, at a minimum, specific information about the diseases concerned; specific vaccine information including product constituents, benefits, and risks; and potential

risks of infection incurred by unimmunized individuals.

3. The commander must counsel the individual that noncompliance with immunization requirements may adversely impact deployability, assignment, or international travel.

4. Per DODI 1300.17 and [sic] applicable service regulations will be provided whether Servicemembers with pending active requests for religious exemption are temporarily deferred from immunizations, pending outcome of their request.

5. Religious exemptions may be revoked, in accordance with Service-specific policies and procedures, if the individual and/or unit are at imminent risk of exposure to a disease for which an immunization is available.

AFI 48-110_IP, Chapter 2-6(b)(3) (emphasis in original).

39.     In recognition of servicemembers' religious freedoms protected by the Constitution and the RFRA, the Office of the Under Secretary of Defense for Personnel and Readiness issued Department of Defense Instruction ("DoDI") 1300.17, entitled "Religious Liberty in the Military Services."

40.     DoDI 1300.17, among other things, sets forth a framework for implementing requirements of the RFRA and details a "policy providing that an expression of sincerely held beliefs (conscience, moral principles, or religious beliefs) may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment." DoDI 1300.17.

41.     DoDI 1300.17 further underscores the military's preference for accommodating "individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs), which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety." *Id*.

42.     Moreover, Air Force Policy Directive ("AFPD") 52-2, entitled, "Accommodation of Religious Practice in Air Force," provides, in pertinent part:

> The Air Force expects commanders and supervisors to permit individual expressions of sincerely held beliefs (conscience, moral principles, or religious). Commanders may impose limits on such expressions when there is a real (not theoretical) adverse impact on military readiness, unit cohesion, good order and discipline, or public health and safety for both the individual and unit levels. Any imposed limitations will employ the least restrictive means possible on expressions of sincerely held beliefs.

AFPD 52-2 at Section 1, Policy (emphasis removed).

## CLAIM FOR RELIEF

### Violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq.

43.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

44.     Plaintiff has a sincerely held religious belief that he must not inject certain substances into his bloodstream.  Defendants' policy of requiring Plaintiff to obtain various immunizations, including for influenza, Hepatitis A, Tetanus-Diphtheria, and others, substantially burdens Plaintiff's religious exercise because it mandates conduct that is prohibited by his religious beliefs and substantially pressures him to modify his behavior in violation of his faith.

45.     Under the RFRA, Defendants may not impose these substantial burdens on Plaintiff unless they can demonstrate that the applicable rules and regulations are the least restrictive means of furthering a compelling governmental interest.

46.     Defendants' actions alleged herein do not further, and are not necessary to further, a compelling governmental interest vis-à-vis Plaintiff. There is no evidence that granting the accommodations requested by Plaintiff would significantly harm the Defendants' asserted interests.

47.     Even if Defendants' actions alleged herein did further a compelling interest vis-à-vis Plaintiff, they are not the least restrictive means of doing so, as is evidenced by Defendants'

practices of granting other similar accommodations.

48.     Plaintiff is suffering, and will continue to suffer, irreparable harm because Defendants are violating fundamental religious-exercise rights protected by the RFRA. He is, and will continue to be, irreparably harmed absent injunctive relief from this Court. The balance of harms suffered by the denial of a preliminary and/or permanent injunction weighs in Plaintiff's favor; and a preliminary and/or permanent injunction would be in the public interest in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law, including, but not limited to:

A.     Issue a temporary restraining order and/or preliminary injunction and a permanent injunction enjoining Defendants, their agents, assistants, successors, employees, attorneys, and all persons acting in concert or cooperation with them or at their direction or under their control, from discharging Captain Roberts from the Air Force and the Arkansas Air National Guard.

B.     Issue a temporary restraining order and/or a preliminary injunction and a permanent injunction enjoining Defendants, their agents, assistants, successors, employees, attorneys, and all persons acting in concert or in cooperation with them or at their direction or under their control, from denying Captain Roberts' valid request for religious accommodation.

C.     Declare that Defendants' interpretation and application of AFI 48-110_IP to Captain Roberts in denying his religious accommodation request and Defendants' resultant decision to discharge Captain Roberts from the Air Force and the Arkansas Air National Guard violate the right to the free exercise of religion that is guaranteed to Captain Roberts under the RFRA.

D.      Grant Captain Roberts an award of back-pay damages in an amount not exceeding $10,000, in accordance with the Military Pay Act, 37 U.S.C. §§ 201-212, and the "Little Tucker Act," 28 U.S.C. § 1346.

E.      Grant Captain Roberts an award of his costs, including reasonable attorney's fees, in accordance with the Equal Access to Justice Act.

F.      Grant such other relief that the Court considers just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Dated: July 6, 2021

Respectfully submitted,

By:  ___/s/ David Ludwig_____
David Ludwig (DC Bar No. 975891)
Ben Barlow (DC Bar No. 497795)
DUNLAP BENNETT & LUDWIG PLLC
1200 G Street, NW, Suite 800
Washington, DC 20005
(202) 316-8558 (telephone)
(855) 226-8791 (facsimile)
dludwig@dbllawyers.com
bbarlow@dbllawyers.com

Timothy Turner, Esq.*
David Long, Esq. *
Stephanie Sickler, Esq.*
WHITCOMB, SELINSKY, P.C.
2000 South Colorado Boulevard
Tower 1, Suite #9500
Denver, CO 80222
Tel: 303-534-1958
Email: tim@wsmlawpc.com
Email: david@wsmlawpc.com
Email: stephanie@whitcomblawpc.com

*Counsel for the Plaintiffff*

*Pro Hac Vice Application Pending

13

## VERIFICATION OF COMPLAINT

I, Travis Roberts, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Travis Roberts

Executed on June 30, 2021.

14