## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAPT. TRAVIS ROBERTS, Arkansas Air National Guard, | ) ) ) | |
| 108197 S. 4803 Rd.<br>Muldrow, OK 74948 | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| HON. JOHN P. ROTH, in his official capacity as Acting Secretary of the United States Air Force; | ) ) ) ) | |
| 1670 Air Force Pentagon<br>Washington, DC 20330-1670 | ) ) ) | |
| GEN. DANIEL R. HOKANSON, in his official capacity as Chief, National Guard Bureau; | ) ) ) ) | **Civil Action No.:** <u>1:21-cv-01797</u> |
| 1636 Defense Pentagon Ste 1E169<br>Washington, DC 20301-0001 | ) ) ) | |
| LT. GEN. DOROTHY A. HOGG, in her official capacity as Surgeon General of the United States Air Force; and | ) ) ) ) | |
| 1780 Air Force Pentagon<br>Washington, DC 20330-1780 | ) ) ) | |
| MAJ. GEN. KENDALL W. PENN, in his official capacity as the Adjutant General, Arkansas National Guard, | ) ) ) ) | |
| Post Headquarters, Camp Robinson<br>North Little Rock, AR 72199-9600 | ) ) ) | |
| Defendants. | ) ) | |

---

## PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER
## AND MOTION FOR PRELIMINARY INJUNCTION

---

*Expedited Relief Requested*

*Oral Argument Requested*

Pursuant to Fed. R. Civ. Pro. 65(b) and LCvR 65.1, Plaintiff Captain Travis Roberts ("Captain Roberts" or "Plaintiff") respectfully requests that the Court restrain and enjoin Defendants Honorable John P. Roth, General Daniel R. Hokanson, Lieutenant General Dorothy A. Hogg, and Major General Kendall W. Penn (collectively, "Defendants") from effectuating Plaintiff's military discharge.  In support, Plaintiff states as follows:

## LCvR 65.1(a) CERTIFICATE OF COUNSEL

Plaintiff's counsel states:   Counsel has identified physical addresses for each of the Defendants named in the case caption above.  At the time of this filing, Counsel has mailed copies of this Motion, the Complaint, and any attachments.

By: /s/ David Ludwig

David Ludwig (DC Bar No. 975891)
Ben Barlow (DC Bar No. 497795)
DUNLAP BENNETT & LUDWIG PLLC
1200 G Street, NW, Suite 800
Washington, DC 20005
(202) 316-8558 (telephone)
(855) 226-8791 (facsimile)
dludwig@dbllawyers.com
bbarlow@dbllawyers.com

*Counsel for the Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iv

INTRODUCTION .................................................................... 1

BACKGROUND ..................................................................... 2

    I.    Captain Roberts' Military History and Religious Beliefs. ............................. 2

    II.   Air Force Immunization and Religious Accommodation Regulations. ........... 6

ARGUMENT ....................................................................... 8

    I.    Legal Standard for a Preliminary Injunction. .................................. 8

    II.   Captain Roberts has Standing to Seek Preliminary Injunctive Relief. ........... 9

    III.  Captain Roberts is Likely to Succeed on the Merits of His RFRA Claim. .............. 9

    IV.  Captain Roberts will Suffer Irreparable Harm Absent the Court's Intervention. .......... 13

    V.   The Balance of Harms Favors Granting a Preliminary Injunction ................. 14

    VI.  The Requested Relief Would Benefit the Public Interest. ......................... 14

CONCLUSION ..................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) ............................................................................................................. 10
*Connection Dist. Co. v. Reno*,
   154 F.3d 281 (6th Cir. 1998) ............................................................................................. 14
*D.M. by Bao Xiong v. Minn. State High Sch. League*,
   917 F.3d 994 (8th Cir. 2019) ............................................................................................... 8
*Dataphase Sys., Inc. v. CL Sys., Inc.*,
   640 F.2d 109 (8th Cir. 1981) ............................................................................................... 8
*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*,
   528 U.S. 167 (2000) .............................................................................................................. 8
*Lujan v. Defs. of Wildlife*,
   504 U.S. 555, 112 S. Ct. 2130 (1992) .................................................................................. 9
*O Centro v. Ashcroft*,
   389 F.3d 973 (10th Cir. 2004) ........................................................................................... 14
*Richenberg v. Perry*,
   73 F.3d 172 (8th Cir. 1995) ................................................................................................. 8
*Rigdon v. Perry*,
   962 F. Supp. 150 (D.D.C. 1997)......................................................................................... 14
*Tanzin v. Tanvir*,
   141 S. Ct. 486 (2020)............................................................................................................ 9
*Weir v. Nix*,
   114 F.3d 817 (8th Cir. 1997) .......................................................................................... 9, 10
*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)...................................................... 13

Statutes

32 U.S.C. § 323................................................................................................................... 1, 9
32 U.S.C. § 709(b) .................................................................................................................. 5
42 U.S.C. § 2000bb............................................................................................................ 2, 9

Regulations

AFI 48-110_IP .......................................................................................................... 1,6,7,10
DoDI 1300.17 ...................................................................................................................... 6,7
Air Force Policy Directive 52-2............................................................................................ 7

Other Authorities

*Over Your Dead Body: An Analysis on Requests for Religious Accommodations for
   Immunizations and Vaccinations in the United States Air Force*,
   81 A.F. L. Rev. 1 (2020)........................................................................................................ 4

## INTRODUCTION

This action is to prevent the unlawful military discharge of Plaintiff Captain Travis Roberts ("Captain Roberts" or "Plaintiff") based on his religious beliefs. Captain Roberts is both a military aviator, with more than a decade of experience piloting the CH-47D/F "Chinook" helicopter, and a devout Christian. His religious beliefs prohibit injection of human fetal cells, animal embryonic cells, fetal bovine serum, formaldehyde, and other compounds and chemicals that are common ingredients in modern immunizations into the human body. Accordingly, in 2018, Captain Roberts requested a religious accommodation pursuant to AFI 48-110_IP and other applicable military regulations to be exempt from certain immunization requirements. Captain Roberts' Major Command ("MAJCOM") – upon advice of the local unit commander, chaplain, senior medical officer, and staff judge advocate – denied the request. Captain Roberts appealed. The Air Force Surgeon General affirmed the denial. There is no further appellate mechanism within the military.

Captain Roberts cannot practice his faith and comply with orders from his superiors to receive three immunizations: tetanus and diphtheria (TD), a tuberculosis skin test (PPD), and the annual flu shot. Except without these immunizations, or a religious accommodation exempting him from the same, Captain Roberts is precluded from obtaining the training needed to ensure his continued military status. Thus, in early May 2021, Captain Roberts' leadership convened a separation board in accordance with 32 U.S.C. § 323, where the board recommended Captain Roberts' honorable discharge from the Air Force and the Arkansas Air National Guard. The discharge is now pending final processing from the Air Force's central personnel office.

Defendants' actions alleged herein have substantially burdened Captain Roberts' religious exercise because they (1) mandate conduct that is prohibited by his sincerely held religious beliefs and (2) pressure him to modify his behavior in violation of his faith. Under the Religious Freedom

1

Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq., Defendants may not impose these substantial burdens on Plaintiff unless they can demonstrate that the applicable policies and actions are the least restrictive means of furthering a compelling governmental interest.   Defendants' actions did not further a compelling interest vis-à-vis Captain Roberts.   Even if they had, they are not the least restrictive means of doing so.   For example, Defendants could have modified or enlarged Plaintiff's work environment, modified his schedule, or simply transferred him to another job within the unit.   Instead, Defendants posed an ultimatum:   compromise your faith or leave. Such actions are inconsistent with the fundamental religious-exercise rights protected by the RFRA and our Constitution.   The Court's interposition is urgently needed.

## BACKGROUND

**I.    Captain Roberts' Military History and Religious Beliefs.**

Captain Roberts attended Sam Houston State University as a member of the Reserve Officer Training Corps ("ROTC").   Upon completing the ROTC program as a Distinguished Military Graduate, he received his officer's commission in the Army Aviation Branch in August 2009.   Captain Roberts then attended the Aviation Basic Officer Leadership Course, Survival Evasion Resistance and Escape ("SERE") – C Level course, Initial Rotary Wing training, and Advanced Graduate Flight Training on the CH-47D helicopter at Fort Rucker, Alabama.   Later, he attended the Aviation Captain's Career Course, an intensive course designed to further an officer's mastery of core doctrinal foundations including unified land operations, mission command, and leadership principles, as well as develop knowledge in brigade/battalion-level planning for both aviation and ground units.

In his career as a helicopter pilot in the Texas National Guard between 2009 and 2018, Captain Roberts mobilized in support of domestic fire, flood, and hurricane relief operations and deployed overseas in support of counterterrorism operations.   As a civilian, Captain Roberts has

worked for the Fort Worth Fire Department as a firefighter and emergency medical technician.  He is also a Federal Aviation Administration ("FAA") certified commercial pilot with instrument rating on both fixed- and rotary-wing aircraft.

Captain Robert's military record is without blemish: he has earned three Army Accommodation Medals, the Army Achievement Medal, and the Global War on Terrorism Expeditionary Medal, among numerous other medals, badges, and decorations.  Captain Roberts has consistently tested in the upper percentiles on military aptitude tests, such as the Air Force Officer Qualifying Test and the Test of Basic Aviation Skills.  Moreover, Captain Roberts holds a Top Secret / Sensitive Compartmentalized Information ("TS/SCI") security clearance, essentially the highest security clearance a servicemember can attain, which requires a thorough and costly investigation into the applicant's background, contacts, finances, travel, criminal history, employment, and other matters.

In summary, Captain Roberts is a model officer and military leader, who possesses critical technical knowledge, skills, clearance, and training, and has demonstrated a commitment to bettering himself and serving his country.

In March 2018, Captain Roberts transferred from the Texas National Guard to become an RPA pilot in the 188th Wing of the Arkansas Air National Guard.  A June 2020 Government Accountability Office ("GAO") study found that the Air Force is experiencing a shortage of RPA pilots.  *See* UNMANNED AERIAL SYSTEMS Air Force Should Take Additional Steps to Improve Aircrew Staffing and Support, GAO Report to Congressional Committees, https://www.gao.gov/assets/gao-20-320.pdf (last accessed May 19, 2021).

Captain Roberts has been a practicing Christian his entire life, including during his time with the Texas National Guard.  There, Captain Roberts received a number of mandatory

3

immunizations without objection.  However, in 2017, after the death of his father and the birth of his first child, Captain Roberts reflected on his faith and determined that immunizations and the proper exercise of his religious beliefs were incompatible.

In the Fall of 2018, after relocating to the Fort Smith area from Texas with his family, Captain Roberts prepared to attend RPA training.  Part of this preparation entailed obtaining medical clearance.  During his medical assessment and examination, Captain Roberts refused the influenza and tetanus/diphtheria immunizations.  His refusal prompted the process for requesting a religious accommodation, which consisted of the following elements:



*See* Lieutenant Colonel Christopher J. Baker, *Over Your Dead Body: An Analysis on Requests for Religious Accommodations for Immunizations and Vaccinations in the United States Air Force*, 81 A.F.L. Rev. 1, 3 (2020).  Captain Roberts followed each of the required steps, first submitting his initial request to his commander on December 2, 2018, which the MAJCOM denied on January 11, 2020, and then appealing the decision to the Air Force Surgeon General on March 16, 2020, which was denied on May 13, 2020.  At the 188th Wing, the response to Captain Roberts' request centered on "24/7 combat operations," "long hours," "confined spaces," and the potential spread of contagious illness in the workplace, as well as the potential impact to deployability.  *See*, *e.g.*,

Ex. 1, Memorandum by Staff Judge Advocate, Lt. Col. Jenny L. Johnson, dated March 11, 2019. No response from the 188th Wing leadership, medical, legal, or religious services discussed the possibility of employing other means to discourage the spread of communicable disease, such as physical distancing, schedule modifications, or a transfer to another role or to another unit. Both the Air Force Surgeon General and 188th Wing personnel seemed to agree that RPA pilots do not have a high tendency to deploy overseas (precisely because their job is remote, and because Captain Roberts is in the national guard, not on active duty), where immunizations are more critical.

During the pendency of his request to the MAJCOM and appeal to the Air Force Surgeon General, the Air Force denied Captain Roberts the opportunity to attend RPA pilot training. Thus, for a span of about two years, local leadership assigned Captain Roberts to a position as mission scheduler for the 188th Operations Group. Until August 21, 2020, Captain Roberts worked full time at the 188th Group at its operational facilities located on Ebbing Air National Guard Base in Fort Smith, Arkansas.

As the 188th Group mission scheduler, Captain Roberts worked among the Group's airmen, inside the same facilities that housed the RPA pilots and mission staff. Captain Roberts, though disappointed with his placement, worked to improve the mission scheduling system, standardizing processes and creating efficiencies, at the same time attending correspondence courses at the Air Command and Staff College in order to improve as an officer. Captain Roberts' commander, Colonel Patric Coggin, reported at the time that "Travis is a great officer; multi-faceted with unique/valuable skills & inter service experience." *See* Ex. 2, Roberts Officer Performance Report, dated April 15, 2019.

During this time, Captain Roberts held a dual-status position, as described in 32 U.S.C. § 709(b). This meant that Captain Roberts was both a GS-13 Air Force employee during the ordinary workweek and an O-3 Air Force officer during drill weekends and training. Captain Robert's GS employment was contingent on maintaining his military status. Thus, after the Air Force Surgeon General denied Captain Roberts' appeal in May 2020, and he still would not consent to the required immunizations, the Air Force terminated Captain Roberts' GS employment on August 21, 2020. The Arkansas Air National Guard then convened a Withdrawal of Federal Recognition Board in early May 2021, which ultimately recommended Captain Roberts' honorable discharge. The discharge is imminent, pending only final processing from the Air Force, at its central personnel office at Wright-Patterson Air Force Base, Ohio.

## II. Air Force Immunization and Religious Accommodation Regulations.

Immunizations in the Air Force are governed by AFI 48-110_IP, entitled "Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases." The section detailing religious-accommodation exemptions provides, in pertinent part:

> *Servicemembers*. Immunization exemptions for religious reasons may be granted according to Service-specific policies to accommodate religious beliefs of a Service member. This is a command decision made with medical, judge advocate, and chaplain input.
>
> Requests for religious exemption must comply with the provisions of the applicable policy and/or regulation for the Servicemember requesting religious accommodation.  . . . For the Air Force, permanent exemptions for religious reasons are not granted; the MAJCOM commander is the designated approval and revocation authority for temporary immunization exemptions. . . .
> A military physician must counsel the applicant. The physician should ensure that the Servicemember is making an informed decision and should address, at a minimum, specific information about the diseases concerned; specific vaccine information including product constituents, benefits, and risks; and potential risks of infection incurred by unimmunized individuals.

6

> The commander must counsel the individual that noncompliance with immunization requirements may adversely impact deployability, assignment, or international travel.
>
> Per DODI 1300.17 and [sic] applicable service regulations will be provided whether Servicemembers with pending active requests for religious exemption are temporarily deferred from immunizations, pending outcome of their request.
>
> Religious exemptions may be revoked, in accordance with Service-specific policies and procedures, if the individual and/or unit are at imminent risk of exposure to a disease for which an immunization is available.

AFI 48-110_IP, Chapter 2-6(b)(3) (emphasis in original).

In recognition of servicemembers' religious freedoms protected by the Constitution and the RFRA, the Office of the Under Secretary of Defense for Personnel and Readiness issued Department of Defense Instruction ("DoDI") 1300.17, entitled "Religious Liberty in the Military Services." DoDI 1300.17, among other things, sets forth a framework for implementing requirements of the RFRA and details a "policy providing that an expression of sincerely held beliefs (conscience, moral principles, or religious beliefs) may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment." DoDI 1300.17. DoDI 1300.17 further underscores the military's preference for accommodating "individual expressions of sincerely held beliefs . . . which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety." *Id.*

Moreover, Air Force Policy Directive ("AFPD") 52-2, entitled, "Accommodation of Religious Practice in Air Force," provides, in pertinent part:

> The Air Force expects commanders and supervisors to permit individual expressions of sincerely held beliefs (conscience, moral principles, or religious). Commanders may impose limits on such

expressions when there is a real (not theoretical) adverse impact on military readiness, unit cohesion, good order and discipline, or public health and safety for both the individual and unit levels. Any imposed limitations will employ the least restrictive means possible on expressions of sincerely held beliefs.

AFPD 52-2 at Section 1, Policy (emphasis removed).

## ARGUMENT

Pursuant to Fed. R. Civ. P. 65(a), Captain Roberts respectfully requests (1) that the Court enjoin Defendants from discharging him from the Air Force and the Arkansas Air National Guard, and (2) that the Court order Defendants to grant his religious accommodation request consistent with the RFRA and applicable implementing regulations, so that Captain Roberts may attend RPA pilot training, become a qualified RPA pilot, and continue to serve his nation.

### I.   Legal Standard for a Preliminary Injunction.

On review of a motion for preliminary injunction, the Court considers (i) "the probability that [the] movant will succeed on the merits"; (ii) "the threat of irreparable harm to the movant"; (iii) "the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant"; and (iv) "the public interest."  *See Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981) (en banc) (cited with approval in *D.M. by Bao Xiong v. Minn. State High Sch. League,* 917 F.3d 994, 999 (8th Cir. 2019)).  Where preliminary injunction is sought to enjoin the discharge of a servicemember, the Court applies the "substantial likelihood of success" and "sufficient showing of irreparable injury" standard.  *See Richenberg v. Perry*, 73 F.3d 172, 173 (8th Cir. 1995).  In this case, Captain Roberts is likely to succeed on his RFRA Claim and all factors weigh heavily in favor of granting injunctive relief.

II.     **Captain Roberts has Standing to Seek Preliminary Injunctive Relief.**

To have standing, Captain Roberts must establish that he has "(1) suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *See Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 180-181 (2000) (internal citations omitted).  The requirement of "injury in fact" is found where there has been an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Here, the 188th Wing has already stripped Captain Roberts of his federal recognition, as described in 32 U.S.C. § 323, and recommended Captain Roberts' honorable discharge from the Air Force and Arkansas Air National Guard.  Thus, his discharge is not conjectural or hypothetical. Absent intervention from the Court, Captain Roberts' discharge will be effected upon final processing from the Air Force's central personnel office.  Captain Roberts' discharge is more than a mere economic injury:  apart from the arbitrary revocation of an entitlement to pay and benefits (which alone conveys standing), the discharge arises from the government's violation of a protected right.

III.    **Captain Roberts is Likely to Succeed on the Merits of His RFRA Claim.**

The RFRA "prohibits the Federal Government from imposing substantial burdens on religious exercise, absent a compelling interest pursued through the least restrictive means."  *See Tanzin v. Tanvir*, 141 S. Ct. 486 (2020); *see also* 42 U.S.C. §2000bb(1)((a),(b). Government is defined to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States."  *See id.*  A person claiming that a governmental

policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief. *See Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997). The "exercise of religion" involves "not only belief and profession but the performance of (or abstention from) physical acts" that are "engaged in for religious reasons." *See Burwell v. Hobby Lobby Stores, Inc.,* 134 S. Ct. 2751, 2770 (2014).

Here, it is beyond dispute that Defendants fall under the ambit of the RFRA, as military officials of the United States. Moreover, Defendants recognize that Captain Roberts' request for religious accommodation is grounded upon a sincerely held religious belief. *See*, *e.g.*, Ex. 3, Memorandum of Maj. Gary Garrison, 188th Wing Chaplain, dated February 20, 2020 ("Captain Roberts' request for an exemption from immunization is derived from his deeply held religious/moral/conscience beliefs. . . . Travis Roberts stated that other service members he had spoken to that shared this same belief, have had administrative religious exemptions for immunizations approved according to the regulation. These individuals encouraged him to go through the process to submit for MAJCOM approval as outlined in the AFI."). Thus, Defendants may not substantially burden Captain Roberts' religious exercise without a compelling interest pursued through the least restrictive means.

To be considered a "substantial" burden, "the governmental action must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunity to engage in those activities that are fundamental to a person's religion." *See Weir*, 114 F.3d at 820 (internal citations omitted).

Here, Defendants have burdened Captain Roberts' religious exercise by compelling him to engage in conduct that a central religious tenet prohibits. *See* Ex. 4, Roberts Memorandum, dated

March 16, 2020.  From the time that Captain Roberts voiced his objection to the required immunizations in the Fall of 2018, up until August 21, 2020, the date of termination of Captain Roberts' dual-status technician employment, Captain Roberts faced skepticism, inquiry, and hostility for his decision to stand by his religious accommodation request.  *See* Ex. 5, Roberts Declaration.  Supervisors within his chain of command, medical personnel, and the chaplain urged Captain Roberts to drop his request and simply get his immunizations.  *Id*. Air Force medical personnel informed Captain Roberts that if he wanted an immunizations waiver, he should "go back to the Army." *Id*.  Captain Roberts has reason to believe that the 188th Wing has not granted religious accommodations for immunizations in the past and does not want to open the floodgates to future requests.  *Id*.  Yet Captain Roberts' request is far from unique:  In fact, servicemembers across all branches of the military have received religious exemptions from mandatory immunization.  *Id*.  That is the reason why the service-specific policies exist.

Defendants do not further a compelling governmental interest in forcing Captain Roberts to receive additional immunizations at this time:  as an RPA pilot, Captain Roberts is unlikely to deploy to a forward location where there is increased need to be immunized against communicable disease; the 188th Wing has already housed Captain Roberts in its operational facilities for two years with no negative impact; and based on prior immunizations, Captain Roberts already possesses immunity for anthrax, hepatitis A and B, polio, meningococcal disease, smallpox, typhoid, measles, mumps, and rubella, and only requires a current tuberculosis test (PPD[1]), a

---

[1] While the PPD skin test requires the intradermal injection of ingredients to which Captain Roberts objects based on his religious beliefs, the common QuantiFERON®-TB Gold Plus blood test does not. https://www.questdiagnostics.com/home/physicians/testing-services/by-test-name/quantiferon/tb-plus/ (last accessed May 24, 2021).

booster for tetanus and diphtheria[2], and a flu shot (presumably when the next flu season begins this October).  *See* Ex. 12, Roberts Immunizations Record.

Even if Defendants have a compelling governmental interest to pursue vis-à-vis Captain Roberts, Defendants' actions are not the least restrictive means of accomplishing that interest.  Air Force policy states that limits of religious practices can only occur "when there is a real (not theoretical) adverse impact on military readiness, unit cohesion, good order and discipline, or public health and safety for both the individual and unit levels."  *See* AFPD 52-2, 1.3.  Assuming that the 188th Wing's position with respect to the potential spread of influenza, tuberculosis, tetanus, and diphtheria within its ranks is entirely non-theoretical (it is completely theoretical), and assuming the same regarding the possibility that RPA pilots deploy (they do not deploy), Defendants must still limit their actions to the least restrictive means.  Yet, plainly, the decisionmakers at the 188th Wing and at the MAJCOM, as well as at the Air Force Surgeon General, did not once consider less restrictive alternatives to requiring Captain Roberts to receive his immunizations.  *See* Ex. 7, Coggin Memorandum; Ex. 8, Gentry Memorandum; Ex. 1, Johnson Memorandum; Ex. 9, Coggin Appeal Memorandum, Ex. 10, Dodroe Appeal Memorandum; Ex. 11, Surgeon General Memorandum.

Immunizations are not the only tool at Defendants' disposal: distancing, physical barriers, air filtration, improved sanitation, hand washing, and other measures prove effective in stopping the spread of communicable diseases.  Captain Roberts served for more than a year as mission scheduler without spreading tuberculosis, influenza, tetanus, or diphtheria at the 188th Group. There is no reason for that to change now or after Captain Roberts becomes an RPA pilot.

---

[2] A recent test shows that Captain Robert possesses antibodies for both Tetanus and Diphtheria. *See* Ex. 6, Antibody Test Results, dated August 19, 2020.

Diphtheria is rare in the United States[3]; so is tetanus, which is not even communicable between humans[4]. Latent tuberculosis can be detected by blood test, rather than by the intradermal injection of religiously objectionable material[5]. Moreover, Captain Roberts currently has tetanus and diphtheria antibodies from his prior immunizations, from his time in the Texas National Guard. *See* Ex. 6, Antibody Test Results. And influenza is only a concern during part of the year (typically regarded as October through April), during which time Defendants can modify Captain Roberts' schedule or make minor modifications to Captain Roberts' physical work environment.

Defendants, having substantially burdened Captain Roberts' religious exercise, did not pursue a compelling governmental interest through the least restrictive means. Thus, Captain Roberts has a high likelihood of success on his RFRA claim.

## IV. Captain Roberts will Suffer Irreparable Harm Absent the Court's Intervention.

A preliminary injunction will be granted where irreparable injury is likely before a decision on the merits can be rendered. *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). Beyond peradventure Captain Roberts will suffer irreparable injury if the Air Force discharges him. First, the discharge stems from the violation of a legally protected right – the right to religious exercise. Second, Captain Roberts will lose pay and benefits (including healthcare benefits for him and his family), the opportunity to advance a promising military career, and the opportunity to achieve military retirement status. While pay can be restored after an ultimate decision on the

---

[3] *See* the Centers for Disease Control and Prevention, *About Diphtheria*, https://www.cdc.gov/diphtheria/about/index.html (last accessed June 2, 2021).

[4] *See* the Centers for Disease Control and Prevention, *About Tetanus*, https://www.cdc.gov/tetanus/about/index.html (last accessed June 2, 2021).

[5] *See* the Centers for Disease Control and Prevention, *Tuberculosis (TB) Testing & Diagnosis*, https://www.cdc.gov/tb/topic/testing/default.htm (last accessed June 2, 2021).

merits is reached, military leadership experience is irreplaceable.  Third, Captain Roberts faces damaging reputational and career impacts.  Finally, Captain Roberts has served his country for approximately 15 years.  Other than his immunization status, Captain Roberts is ready to clear his Aeronautical Review Board ("ARB") waiver and be deemed fit to fly.  However, his imminent discharge will prevent him from logging flight hours, allowing him to continue to develop as a military aviator.

## V.      The Balance of Harms Favors Granting a Preliminary Injunction.

Ordering Captain Roberts' military discharge stayed during the pendency of this case will result in no injury to Defendants.  Since late 2018, Captain Roberts has been working with members of the 188th Wing without causing a public-health crisis in the Arkansas Air National Guard from his missing tuberculosis test, tetanus and diphtheria booster, and flu shot.  Defendants cannot have a viable concern to allow Captain Roberts to continue to serve while awaiting the outcome of this dispute.  Further, Captain Roberts has reason to believe that other branches of the armed services, along with their reserve and national guard components, have granted religious accommodation requests for immunizations.  *See* Ex. 5, Roberts Declaration.

## VI.     The Requested Relief Would Benefit the Public Interest.

As "recognized by Congress when it enacted the RFRA," there is a "strong public interest in a citizen's free exercise of religion."  *See O Centro v. Ashcroft*, 389 F.3d 973, 1010 (10th Cir. 2004) (en banc), *aff'd* 546 U.S. 418 (2006); *Rigdon v. Perry*, 962 F. Supp. 150, 156 (D.D.C. 1997) (granting an injunction in a RFRA case because "an injunction will serve the public interest to prevent the violation of a party's constitutional rights" because "the public as a whole

14

has a significant interest in . . . protection of First Amendment liberties." *See Connection Dist. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998).

Additionally, Captain Roberts is slotted to become an RPA pilot, a position that the Air Force is struggling to fill during this era of evolving warfare. *See*, *supra*, UNMANNED AERIAL SYSTEMS Air Force Should Take Additional Steps to Improve Aircrew Staffing and Support, GAO Report to Congressional Committees, https://www.gao.gov/assets/gao-20-320.pdf (last accessed May 19, 2021). Our country needs every qualified aviator, especially those most suited for providing close-air support, gathering intelligence, and conducting strategic air strikes in the next generation battlespace, of which RPA are a critical part. *See* Air Force Job Description, RPA Pilot https://www.airforce.com/careers/detail/remotely-piloted-aircraft-pilot (last accessed May 25, 2021). Thus, affording Captain Roberts the opportunity to train as an RPA pilot to assist the 188th Group accomplish its mission will serve the public interest.

## CONCLUSION

For the foregoing reasons and for the reasons stated in his Complaint, Captain Roberts respectfully requests that the Court to grant his Application for Temporary Restraining Order and Motion for Preliminary Injunction.

Dated: July 6, 2021                                  Respectfully submitted,

By:   /s/ David Ludwig

David Ludwig (DC Bar No. 975891)
Ben Barlow (DC Bar No. 497795)
DUNLAP BENNETT & LUDWIG PLLC
1200 G Street, NW, Suite 800
Washington, DC 20005
(202) 316-8558 (telephone)
(855) 226-8791 (facsimile)
dludwig@dbllawyers.com
bbarlow@dbllawyers.com

15

Timothy Turner, Esq.*
David Long, Esq. *
Stephanie Sickler, Esq.*
WHITCOMB, SELINSKY, P.C.
2000 South Colorado Boulevard
Tower 1, Suite #9500
Denver, CO 80222
Tel: 303-534-1958
Email: tim@wsmlawpc.com
Email: david@wsmlawpc.com
Email: stephanie@whitcomblawpc.com

*Counsel for the Plaintifff*

*Pro Hac Vice Application Pending