UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAPT. TRAVIS ROBERTS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HON JOHN P. ROTH, ) <br> in his official capacity as Acting ) <br> Secretary of the United States ) <br> Air Force, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 21-1797 (ABJ) |

## MEMORANDUM OPINION

Captain Travis Roberts filed the complaint in this case on July 6, 2021, asserting that:

> This action is to (1) restrain Defendants from discharging Captain Roberts in violation of his right to the free exercise of religion, as described in the Constitution and in the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb et seq, and (2) require Defendants to afford Captain Roberts a religious-based immunizations waiver, enabling him to train as an RPA pilot and continue to serve his nation.

Compl. [Dkt. # 1] ¶ 9.

On the day he filed the complaint, plaintiff filed a motion seeking immediate injunctive relief. *See* Pl.'s Appl. for TRO and Mot. for Preliminary Injunction [Dkt. # 2] ("PI Mot."). Plaintiff withdrew the portion of the motion asking for a temporary restraining order on July 9, 2021, *see* Notice of Withdrawal of Pl.'s Appl. for TRO [Dkt. # 4], and on July 19, 2021, the Court consolidated consideration of the motion for preliminary injunction with the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). Min. Order (July 19, 2021). On that date, the Court issued another minute order observing that "the complaint alleges that the Withdrawal of Federal

1

Recognition Board has been convened, but as the parties emphasized in the federal defendants' Consent Motion for Extension of Time [Dkt. # 10], the final decision with respect to plaintiff's military discharge is still pending." Since this raised a question as to whether there was a ripe controversy to review, the Court ordered plaintiff "to show cause . . . why the matter should not be dismissed for lack of subject matter jurisdiction." Min. Order (July 19, 2021). Plaintiff responded on July 30, 2021. *See* Pl.'s Resp. to Order to Show Cause [Dkt. # 27].

Since that time, the federal defendants filed a motion for summary judgment for lack of jurisdiction and other grounds, *see* Federal Defs.' Mot. for Summ. J. and Opp. to PI Mot. [Dkt. # 29] ("Fed. Mot."), the state defendant filed a motion for summary judgment, *see* State Def.'s Mot. for Summ. J. [Dkt. # 31] ("State Mot."), and plaintiff opposed the motions and filed one of his own. *See* Pl.'s Combined Opp. to Fed. Mot. (Joined by the State Def.), Cross-Mot. for Summ. J., and Reply in Further Supp. of PI Mot. [Dkt. # 34] ("Pl.'s Mot."). The motions are fully briefed. *See* Federal Defs.' Reply in Supp. of Fed. Mot. and Opp. to Pl.'s Mot. [Dkt. # 41] ("Fed Reply"); State Def.'s Reply in Supp. of State Mot. and Opp. to Pl.'s Mot. [Dkt. # 43] ("State Reply"); Pl.'s Reply in Further Supp. of Pl.'s Mot. [Dkt. # 45] ("Pl.'s Reply").

Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." For the following reasons, the Court finds that it cannot reach the merits of this case, as plaintiff's complaint is not ripe, and the case must be dismissed.

## BACKGROUND

Captain Travis Roberts is a member of the 188th wing of the Arkansas Air National Guard. Compl. ¶ 1. He has served in that capacity since March 2018. Compl. ¶ 27. He states that "in 2017, after the death of his father and birth of his first child, Captain Roberts reflected on his faith

and determined that immunizations and the proper exercise of his faith were incompatible." Compl. ¶ 29.

On December 2, 2018, plaintiff "request[ed] an exemption from immunization policies."[1] Fed. Mot. at 4. He states that he has "a religious practice of avoiding the injection of certain chemicals and compounds into the human body, especially into the bloodstream." Pl.'s Mot. at 4. "Additionally, Plaintiff's religion condemns the use of human fetal cell lines in the development of vaccines." *Id.* Plaintiff objected to receiving the tetanus-diphtheria and influenza vaccines. *Id.* at 3; Fed. Mot. at 4.

Plaintiff's objection led to a lengthy administrative review. *See* Fed. Mot. at 5 ("Plaintiff's request was reviewed by several layers of his command.").

- February 3, 2019: "Lt. Col. William Hayes, Senior Flight Surgeon, 188th Medical Group, submitted a memo in response to Plaintiff's request for an immunization waiver." *Id.* He "concluded that inadequate immunized servicemembers would pose a potential health risk to the operational mission and would not be deployable, and recommended against granting an immunization waiver to Captain Roberts." *Id.* (internal quotation marks omitted).

- March 11, 2019: "Lt. Col. Jenny Johnson, Staff Judge Advocate, 188th Wing, submitted a legal review memo concluding that the recommendations to deny the immunization exemption request were appropriate and legally sufficient." *Id.*

- March 14, 2019: "Col. Jeremiah S. Gentry, Commander, 188th Operations Group, submitted a memo recommending denial of the request." *Id.* at 5–6. On that same date, "Col. Robert Kinney, Commander, 188th Wing, submitted a memo recommending denial of the request." *Id.* at 6. And on that same date, "Lt. Col. Patric D. Coggin, Commander, 188th Operations Support Squadron, submitted a memo recommending denial."[2] *Id.* at 7.

---

1  "Plaintiff generally takes no issue with the factual statements contained in Federal Defendants' Motion and Opposition." Pl.'s Mot. at 3.

2  "Captain Roberts' request was reviewed by others, including Col. Paul Jara, Director of Staff, Arkansas Air National Guard, Col. Steven E. Coney, Staff Judge Advocate, Arkansas Air National Guard, Brig. Gen, Marc A. Sicard, Arkansas Air National Guard Commander. All of those officers also recommended denying the request." Fed. Mot. at 6 (citations omitted).

- May 8, 2019: "Maj. Gen. Mark H. Berry, the Adjutant General and Commanding General of the Arkansas National Guard, disapproved Plaintiff's request for an immunization exemption." *Id.* "Plaintiff's request then was sent to the National Guard Bureau's Air National Guard Readiness Center for further review and processing." *Id.*

- December 2, 2019: "Lt. Col. Ashley Williams, Chief, Public Health & Prevention Branch, Air National Guard Readiness Center (ANGRC), submitted a memo recommending that the ANGRC Commander deny the request." *Id.*

- January 7, 2020: "the ANGRC Commander denied the exemption request." *Id.*

After plaintiff's exemption request was denied, "[h]e was ordered to receive the required immunizations during an appointment set for that same day. Plaintiff showed up to the appointment, but continued to refuse the required shots." Fed. Mot. at 7–8 (citations omitted). He instead filed an appeal with the Air Force Surgeon General on March 16, 2020. *Id.* at 8. This prompted another lengthy review process.

- April 20, 2020: "Col. Coggin, 188th Operations Group, submitted a memo to the 188th Wing Commander recommending denial of Plaintiff's appeal for exemption from vaccinations." *Id.*

- May 13, 2020: "Lt. Col. Ashley Williams, Chief, Public Health & Prevention Branch, ANGRC, submitted a memo seeking the Air Force Surgeon General's final approval or denial." *Id.* She recommended that the Air Force Surgeon General deny the request. *Id.* at 9.

- June 16, 2020: "Maj. Gen. Steven A. Schaick, Chief of Chaplains for the Air Force, sent an email recommending to deny the immunization waiver request." *Id.*

- On an unspecified date between June 16 and August 2, "[t]he Air Force Surgeon General denied Plaintiff's appeal." *Id.*

- August 2, 2020: "Col. Coggin, 188th Operations Group Commander, notified Plaintiff in writing that his request for an exemption was denied and ordered him to comply with all Air Force requirements for immunizations immediately." *Id.*

Plaintiff "confirmed receipt" of the order, but "informed his superior officer that he did not intend to comply," and, as a result, Col. Coggin issued a letter of reprimand. Fed. Mot. at 9; *see also* Pl.'s Mot. at 5–6 ("Colonel Coggin issued Plaintiff a Letter of Reprimand for disobeying a

4

lawful order – that is, to obtain the immunizations required for medical clearance."). Plaintiff responded to the letter on September 15, 2020. Fed. Mot. at 9.

The Arkansas Air National Guard then convened a Withdrawal of Federal Recognition Board ("WOFR Board"), which again initiated a multi-layered review. Fed. Mot. at 9; Pl.'s Mot. at 7.

- May 1, 2021: The WOFR Board is first convened. Fed. Mot. at 9. "After hearing evidence from both the government and respondent," "[t]he Board recommended that Captain Roberts be honorably discharged." *Id.* at 10.

- August 2, 2021: "Col. Leon Dodroe, Commander, 188th Wing, recommended approval of the withdrawal of his federal recognition and discharge from the Arkansas Air National Guard." *Id.*

- August 7, 2021: "Brig. Gen. James R. Rowlett, Chief of Staff AR ANG, recommended withdrawing Plaintiff's federal recognition." *Id.*

- August 11, 2021: "Maj. Gen. Kendall W. Penn, The Adjutant General (TAG) reviewed the WOFR proceedings and approved the request to withdraw Capt. Roberts' federal recognition." *Id.*

The defendants maintain, though, that the process is far from over. In support of their motion for summary judgment and opposition to the motion for an interim injunction, the federal defendants submitted a declaration from Lora M. Wakefield, "Deputy Chief for the Air National Guard (ANG) Force Management Division in the Manpower, Personnel, Recruiting, and Services (A1) Directorate at the Air National Guard Readiness Center (ANGRC), which is a part of the National Guard Bureau (NGB)." *See* Decl. of Mrs. Lora M. Wakefield, Ex. 1 to Fed. Mot. [Dkt. # 29-2] ("Wakefield Decl.") ¶ 1.

The declaration details the discharge process for someone in plaintiff's position and asserts that "[t]he Air Force has not yet made a final determination on Captain Roberts's discharge." *Id.* ¶ 4. In particular, the declarant explains that the WOFR Board only makes recommendations, and

that the Secretary of the Air Force Personnel Council ("SAFPC") makes the decisions regarding discharge. Fed. Mot. at 13; *see also* Wakefield Decl. ¶ 9 (the SAFPC "holds the final authority in ANG officer cases"). Moreover, the declaration explains that, even if plaintiff were to be discharged by the SAFPC, "he then has the opportunity to apply to the Air Force Board for the Correction of Military Records, which has broad authority to provide relief." Fed. Mot. at 10, citing Wakefield Decl. ¶¶ 18–19.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and possess "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). Article III of the United States Constitution provides that federal courts may hear only justiciable cases or controversies. U.S. Const. Art. III, § 2. In every federal case, the threshold question is whether the court has the judicial power to hear the suit. *Warth v. Seldin,* 422 U.S. 490, 498 (1975). This Court is "forbidden—as a court of limited jurisdiction—from acting beyond [its] authority, and 'no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), quoting *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).

"The ripeness doctrine generally deals with when a federal court can or should decide a case. Part of the doctrine is subsumed into the Article III requirement of standing, which requires a petitioner to allege *inter alia* an injury-in-fact that is imminent or certainly impending." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (internal quotation marks omitted); *see also Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (ripeness "shares the constitutional requirement of standing that an injury in fact be certainly impending.").

"Even if a case is 'constitutionally ripe,' though, there may also be 'prudential reasons for refusing to exercise jurisdiction." *Am. Petroleum Inst.*, 683 F.3d at 386, quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003). "In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and protects the agencies from judicial interference' in an ongoing decision-making process." *Id.*, quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967) (ellipses and brackets omitted).

In considering the prudential ripeness doctrine, "courts must consider '(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented.'" *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48–49 (D.C. Cir. 1999), quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 733 (1998). "The 'primary focus' of the prudential aspect of the ripeness doctrine is to balance 'the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting.'" *Id.*, quoting *Eagle–Picher Indus. v. EPA,* 759 F.2d 905, 915 (D.C. Cir. 1985).

## ANALYSIS

Plaintiff's claim is not constitutionally ripe because his alleged injury is not certainly impending. While plaintiff argues that his discharge is likely, he has not been discharged at this point. *See* Wakefield Decl. ¶¶ 17, 15 ("Captain Roberts has not yet been discharged" because the

Secretary of the Air Force Personnel Council "reviews the case and makes a final determination" "on whether to approve or disapprove the recommendation to discharge the officer."). As defendants explain, Fed. Mot. at 12–15, the WOFR Board has made a recommendation regarding plaintiff's discharge, but a recommendation – as the word implies – is not the same as a final decision. *See also Toms v. Off. of the Architect of the Capitol*, 650 F. Supp. 2d 11, 27 (D.D.C. 2009) ("it is not the Hearing Officer that makes the final decision as to an AOC employee's termination, but the Architect of the Capitol himself; the Hearing Officer merely recommends a course of action . . . which Architect of the Capitol considers when making his final decision."). This means that plaintiff's alleged injury is theoretical, rather than certain and impending.

Other district courts have similarly concluded that military discharge complaints are not ripe at the commencement of discharge proceedings; they are ripe only after a plaintiff has been discharged. *See, e.g., Vaughan v. Kentucky Army Nat. Guard*, No. 3:12-35, 2013 WL 211075, at *6 (E.D. Ky. Jan. 18, 2013) ("Nor has Vaughan's federal recognition been finally withdrawn. A claim is not justiciable where it hinges on hypothetical future events."); *Diraffael v. California Mil. Dep't*, No. 10-7240, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011) ("the commencement of discharge proceedings" is not sufficient injury when "those discharge proceedings are still underway and to date no final determination has been reached"). Since the court lacks subject matter jurisdiction to consider the complaint, it must be dismissed.

Moreover, even if one could conceive of some constitutional basis to hear this case, the Court would decline to do so for prudential reasons. The Air Force should be afforded an opportunity to formulate and explain its decision, and until it does so, the case is not fit for judicial review. *See Am. Petroleum Inst.*, 683 F.3d at 387 ("declining jurisdiction over a dispute while there is still time for the challenging party to convince the agency to alter a tentative position

provides the agency an opportunity to correct its own mistakes and to apply its expertise, potentially eliminating the need for (and costs of) judicial review") (internal quotation marks and citation omitted). "Put simply, the doctrine of prudential ripeness ensures that Article III courts make decisions only when they have to, and then, only once." *Id.* Taking up plaintiff's claims now would defeat the purpose of the ripeness doctrine: to "protect the agencies from judicial interference until an administrative decision has been formalized." *Gardner*, 387 U.S. at 148.[3] These concerns have particular force in the military context, where considerable deference is due. *See, e.g.*, *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986) ("courts must give great deference to the professional judgment of military authorities"); *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953) ("judges are not given the task of running the" military; [o]rderly government requires that the judiciary be as scrupulous not to interfere with legitimate [military] matters as the [military] must be scrupulous not to intervene in judicial matters").

Plaintiff does not dispute defendants' representations regarding the discharge process, or that the WOFR Board has made a non-binding recommendation of discharge that may be either accepted or rejected by the decision-maker. *See* Pl.'s Mot. at 8 ("Plaintiff is in no position – and has had no opportunity through discovery – to challenge those statements and must accept their accuracy, at least for purposes of responding to the instant motion."); *see also id.* at 2 ("Whether discharge, here or in any case, must ineluctably follow the WOFR Board's recommendation is no matter."). He suggests instead that the federal defendants should "simply inquire as to the status

---

3   While plaintiff is understandably frustrated by the pace of proceedings, the hardship to him is mostly theoretical at this point since he has not been actually discharged, so the Court cannot say that "hardship caused by [] deferral" would be so "immediate and significant" to "overcome the finality and fitness problems inherent in attempts to review tentative positions." *Am. Petroleum Inst.*, 683 F.3d at 389.

of Plaintiff's discharge – or, at minimum, request the Court to stay this case until such a certificate can be issued." Pl.'s Mot. at 8. But the Court cannot, and will not, order defendants to speed up or circumvent established administrative processes in order to establish its jurisdiction to hear the case. Until defendants issue the administrative decision, they cannot state with finality what the outcome will be, and until the Court has jurisdiction, it has no authority to issue a stay.

Plaintiff also contends that "all Record evidence suggest that Plaintiff will be discharged upon final processing." Pl.'s Mot. at 8. He explains why he believes it is unlikely that the SAFPC would overturn "the WOFR Board recommendation endorsed by the three high ranking officials." *Id.* at 8–9. But this Court is in no position to make predictions as to what other entities might conclude. *See Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021) (plaintiff argued that "his separation through a Board of Inquiry is a foregone conclusion," but as long as the administrative process is pending, "the Court cannot so easily dismiss the possibility that he will have a fair opportunity to make his case to" the agency, so the "discharge is neither as imminent nor as certain as he suggests").[4]

Nothing plaintiff has argued changes the fact that he has yet to be discharged and the case is not ripe. Therefore, the Court does not have jurisdiction to hear the case.

## CONCLUSION

The Court acknowledges that plaintiff has an understandable desire to obtain a clear resolution of the current impasse as quickly as possible. But federal courts are courts of limited jurisdiction, and this Court simply does not have the power to review plaintiff's case because the

---

4   Because the Court concludes that it does not have jurisdiction to hear this case, it will not reach defendants' other, related arguments, such as that plaintiff failed to exhaust administrative remedies.

controversy is not ripe. Under Federal Rule of Civil Procedure 12(h)(3), then, the case must **DISMISSED.**

A separate order will issue.

*Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: March 21, 2022